# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

United States of America,

    Plaintiff

v.

Willie Allen Dillard,

    Defendant

Case No.: 2:09-cr-00057-JAD-GWF

**Order Granting in Part Defendant's First Amended Motion to Vacate, Set Aside, or Correct Conviction and Sentence under 28 U.S.C. § 2255**

[ECF No. 85]

    Willie Allen Dillard was sentenced to 15 years in federal prison after he pled guilty to being a felon in possession of a firearm and the sentencing judge found that his prior convictions for Nevada robbery qualified as violent felonies that enhanced his sentence under the Armed Career Criminal Act (ACCA).  Dillard moves under 28 U.S.C. § 2255 to vacate his conviction and sentence based on the United States Supreme Court's recent decisions in *Johnson v. United States*[1] and *Rehaif v. United States.*[2]  Although I deny his *Rehaif* motion because Dillard has not shown prejudice from the indictment's failure to allege—and the district court's failure to advise him of—the mens rea element first recognized in *Rehaif*, I grant his *Johnson* motion because Nevada robbery is not a categorical crime of violence, and I set this case for resentencing.

---

[1] *Johnson v. United States*, 135 S.Ct. 2551 (2015).

[2] *Rehaif v. United States*, 139 S.Ct. 2191 (2019).

**Background**

Dillard was indicted on one count of being a felon in possession of a firearm on February 18, 2009.[3]  The indictment alleged that:

> On or about October 11, 2008, in the State and Federal District of Nevada, WILLIE ALLEN DILLARD, defendant herein, having been convicted of crimes of violence punishable by imprisonment for a term exceeding one year, to wit: in Clark County Nevada, defendant was convicted on October 10, 1996, of Robbery with the use of a deadly weapon in violation of Nevada Revised Statutes 195.030 and 200.380, did knowingly possess a .25 caliber Phoenix Arms Raven semi-automatic handgun, serial number 3221402, said possession being in and affecting commerce, in violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2) and 924(e).[4]

On March 9, 2011, Dillard pled guilty, without a plea agreement, to a single charge of being a felon in possession of a firearm.[5]  Prior to accepting his plea, United States District Judge Roger Hunt asked Dillard:

> Do you understand that in order to convict you of that—of those charges that the defendant—or that the Government would have to prove beyond a reasonable doubt that, [1] you are a convicted felon; [2] that you had knowing possession of a firearm or ammunition; and [3] that the firearm or ammunition was in or affecting interstate commerce?  Do you understand that's what they would have to prove?[6]

Dillard responded affirmatively.[7]  During the plea colloquy, Dillard admitted that: (1) he had been previously convicted of robbery with use of a deadly weapon, burglary, and robbery; (2) he

---

[3] ECF No. 1.

[4] *Id.*

[5] ECF Nos. 47; 63.

[6] ECF No. 63 at 8.

[7] *Id.*

possessed a .25 caliber Phoenix Arms Raven semiautomatic handgun on October 11, 2008; and (3) the firearm traveled in interstate commerce.[8]  Judge Hunt accepted Dillard's plea.[9]

Dillard's sentence was enhanced under the ACCA[10] because he had three prior felony convictions for Nevada robbery,[11] which the U.S. Probation Office deemed, and the sentencing court concluded, was a "violent felony" under the ACCA.  Dillard spent well over a decade in prison for those convictions before possessing the firearm that was the subject of the instant felon-in-possession conviction.[12]  The ACCA raised the 10-year maximum statutory sentence for Dillard's charge to life imprisonment and imposed a 15-year statutory minimum sentence.  With the enhancement, Dillard's guideline range was 180–210 months, based on a total offense level of 30 and criminal history category of VI.[13]  Without the enhancement, Dillard's guideline range would have been 77–96 months, based on a total offense level of 21 and criminal history category of VI.[14]  Dillard objected to the ACCA sentencing enhancement, but the sentencing court overruled that objection and imposed a 15-year sentence.[15]

The Ninth Circuit affirmed Dillard's sentence on direct appeal in 2012.[16]  Following his federal sentencing, Dillard served an unrelated state sentence in Nevada state custody.  After Dillard completed his state sentence, he was transferred to federal custody and filed a motion to

---

[8] *Id.* at 11–14.

[9] *Id.* at 14.

[10] ECF No. 62 at 5; 18 U.S.C. § 924.

[11] Nev. Rev. Stat. § 200.380.

[12] Pre-Sentencing Report (PSR) ¶¶ 24–29.

[13] *Id.* ¶ 60.

[14] *Id.* ¶¶ 13–22.

[15] ECF Nos. 56; 62.

[16] ECF No. 66.

vacate his sentence under *Johnson*.[17]  I denied the government's motion to dismiss Dillard's

petition as untimely[18] and granted him leave to amend his motion to include *Rehaif* claims.[19]

### Discussion

**I.    Dillard's *Johnson* claim**

    **A.    The ACCA and the categorical approach**

At the time Dillard was sentenced, the ACCA defined a "violent felony" as:

> Any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult that—
>
> (i)    has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)    is burglary, arson, or extortion, involves the use of explosives, or otherwise involves the conduct that presents a serious potential risk of physical injury to another.[20]

Subsection (i) is known as the "elements clause"; subsection (ii)'s list of offenses is known as the

"enumerated clause"; and the final phrase in subsection (ii)—"otherwise involves conduct that

presents a serious potential risk of physical injury to another"—is known as the "residual

clause."  On June 26, 2015, the Supreme Court in *Johnson* invalidated the residual clause as

unconstitutionally vague.[21]  Then, on April 16, 2016, the Supreme Court held in *Welch v. United*

---

[17] ECF No. 72.

[18] ECF No. 75.

[19] ECF No. 84.

[20] 18 U.S.C. § 924(e)(2)(B).

[21] *Johnson,* 135 S. Ct. at 2563.

*States* that *Johnson* announced a new "substantive rule" that applies retroactively to cases on collateral review.[22]

To determine whether a prior state felony conviction is a crime of violence, courts must apply the categorical approach by "looking only to the fact of conviction and the statutory definition of the prior offense, not to the facts underlying the conviction."[23]  In the context of the elements clause, courts compare the prior offense's elements to the elements clause.[24]  In the context of the enumerated clause, courts compare that crime's elements to the elements of one of the listed generic offenses.[25]  "If the crime of conviction falls within the generic federal definition—meaning it does not punish a broader range of conduct than the generic offense—the conviction qualifies as a crime of violence."[26]  Conversely, a prior offense is overbroad if it "criminalizes any conduct not covered by the generic offense . . . ."[27]

### B.    Dillard's Nevada robbery convictions

The government argues that Dillard's robbery convictions under Nevada Revised Statutes (NRS) § 200.380 are violent felonies under the ACCA.[28]  NRS § 200.380 defines robbery as the "unlawful taking of personal property from the person of another, or in the person's presence, against his or her will, by means of force or violence or fear of injury, immediate or future, to his

---

[22] *Welch v. United States*, 136 S. Ct. 1257 (2016).

[23] *United States v. Dixon*, 805 F.3d 1193, 1195 (9th Cir. 2015) (quotations omitted).

[24] *See id.*; 18 U.S.C. § 924(e)(2)(B)(i).

[25] *United States v. Studhorse*, 883 F.3d 1198, 1203 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 127, (2018).

[26] *Door*, 917 F.3d at 1151.

[27] *United States v. Vederoff*, 914 F.3d 1238, 1244 (9th Cir. 2019).  If a state statute is overbroad, courts consider if it divisible.  *Dixon*, 805 F.3d at 1196.  The government does not argue that the statute is divisible, so I need not—and do not—address it.

[28] ECF No. 86 at 4–13.

or her person or property, or the person or property of a member of his or her family, or of anyone in his or her company at the time of the robbery."[29]  I have held in another case that violations of NRS § 200.380 are not categorical violent felonies,[30] and I do so again here.

In *United Sates v. Edling*, the Ninth Circuit held that Nevada's robbery offense does not qualify as a "crime of violence" under the revised sentencing guidelines.[31]  The Court concluded that NRS § 200.380 is not a categorical match under the guidelines' elements clause because it criminalizes force and threats of force directed against property.[32]  Because the ACCA's elements clause is identically-worded, § 200.380 is not a categorical match under the ACCA's elements clause, as well.[33]    As for the enumerated cause, the Ninth Circuit held that simple California robbery does not qualify as a "violent felony" under the ACCA in *United States v. Dixon* because the California statute criminalizes conduct not included within the ACCA's definition of a violent felony.[34]  California Penal Code (CPC)§ 211 prohibits "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."[35]  The *Dixon* panel reasoned that generic extortion, which is an enumerated offense included in the ACCA's definition of "violent felony," would encompass many—but not all—violations of simple California robbery.[36]

---

[29] Nev. Rev. Stat. § 230.080.

[30] *United States v. Cooper*, No. 2:14-cr-00228-JAD-CWH, ECF No. 229 at 55–58 (Sept. 28, 2016), *aff'd*, *United States v. Cooper*, 729 F. App'x 609, 610 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1636 (2019).

[31] *United Sates v. Edling*, 895 F.3d 1153, 1158 (9th Cir. 2018).

[32] *Id.* at 1157.

[33] *Compare* 18 U.S.C. § 924(e)(2)(B)(i), *with* U.S.S.G. § 4B1.2(a)(1).

[34] *Dixon*, 805 F.3d at 1197–98.

[35] Cal. Penal Code § 211.

[36] *Dixon*, 805 F.3d at 1197–98.

Although some violations of the California robbery statute that could not qualify as extortion would qualify under the elements clause, the panel identified at least one class of CPC § 211 violations that would not: those in which (1) the taking is not consensual—thereby failing the definition of generic extortion—and (2) the defendant uses forces against a person, but only accidentally or negligently, rather than intentionally—thereby failing the elements clause.[37]

Nevada robbery, like the California robbery statute at issue in *Dixon*, is also not a categorical match under the elements clause, albeit in different ways. Generic extortion would encompass many violations of NRS § 200.380,[38] but, like in *Dixon*, the elements of § 200.380 could be met without qualifying as either generic extortion or under the elements clause because "the Nevada statute [1] punishes the nonconsensual taking of property"—thereby failing under the enumerated clause—and "[2] punishes threats directed at property in addition to threats directed at another person"—thereby failing under the elements clause under *Edling*.[39] Because NRS § 200.380 encompasses conduct that would satisfy neither the enumerated-offense clause nor the elements clause, Nevada robbery is overbroad and cannot qualify as an ACCA predicate.

---

[37] *Id.* at 1197.

[38] *See United States v. Harris*, 572 F.3d 1065, 1066 (9th Cir. 2009) (finding that NRS § 200.380 is a "crime of violence" under the sentencing guidelines because any conduct it encompasses that would not satisfy generic robbery would satisfy generic extortion). The government relies on Harris and other cases interpreting the pre-2016 guidelines, but they are distinguishable because, unlike ACCA, the guidelines included robbery among their enumerated offenses. *See id.*, *United States v. Becerril-Lopez*, 541 F.3d 881 (9th Cir. 2008).

[39] *Cooper*, 729 F. App'x at 610. As an independent ground for my decision, Nevada's robbery statute fails to require intentional conduct. *Compare* NRS § 200.380 (robbery is "unlawful taking of property . . ."), *with id.* § 200.471(1)(a)(2) (assault with a deadly weapon is "intentionally placing another person . . ."; *see also* ECF No. 80 at 8–10 (distinguishing cases cited by the government). Because state offenses that encompass non-intentional conduct fail the elements clause, Nevada's robbery statute is not a violent felony for this reason, as well. *See United States v. Begay*, 934 F.3d 1033, 1041 (9th Cir. 2019); *United States v. Walton*, 881 F.3d 768, 775 (9th Cir. 2018).

1   I thus grant Dillard's motion in part, vacate Dillard's sentence, and set this case for resentencing

2   without the ACCA enhancement.

3   **II.    Dillard's *Rehaif* claims**

4          In *Rehaif v. United States,* a defendant successfully challenged his conviction for

5   possessing a firearm as an alien unlawfully in the United States in violation of 18 U.S.C.

6   § 922(g).[40]  Overturning a broad consensus among the circuit courts, the Supreme Court held

7   that, in order to establish a violation of § 922(g), the government "must prove both that the

8   defendant knew he possessed a firearm and that he knew he belonged to the relevant category of

9   persons barred from possessing a firearm."[41]  Dillard argues that *Rehaif* requires this court to

10  vacate his conviction because he was charged with, and voluntarily pleaded guilty to, only the

11  first mens rea element.

12         **A.    *Rehaif*'s additional mens rea element for § 922(g) crimes**

13         Dillard seizes on the Supreme Court's language in *Rehaif* to argue that the government

14  was required to prove not one, but two additional elements: (1) that he knew he belonged to "the

15  relevant category of persons"—here, persons who had been convicted of a crime punishable by

16  imprisonment for a term exceeding one year—and (2) that he knew that this prior conviction

17  "barred [him] from possessing a firearm."[42]  But *Rehaif*'s discussion of the "well-known maxim

18  that 'ignorance of the law' . . . is no excuse" undermines Dillard's expansive reading of *Rehaif*.[43]

19  The Supreme Court noted that Rehaif's knowledge of his immigration status was a collateral

20  matter not subject to the maxim, meaning that "a defendant who does not know that he is an

21  _____

22  [40] *Rehaif*, 139 S. Ct. at 2194–95.

    [41] *Id.* at 2200.

23  [42] ECF No. 87 at 4.

    [43] *Rehaif,* 139 S. Ct. at 2198 (quoting *Cheek v. United States*, 498 U.S. 192, 199 (1991)).

alien 'illegally or unlawfully in the United States' does not have the guilty state of mind that the statute's language and purposes require."[44]  Missing from that discussion was any notion that the government is also required to prove that Rehaif knew he was prohibited from possessing a firearm, which goes to the heart of the "ignorance of the law" maxim.  The Sixth Circuit has rejected Dillard's reading of *Rehaif* on this basis.[45]  So, applied to the facts of this case, *Rehaif* requires only that Dillard knew that he had been convicted of a crime punishable by imprisonment for a term of more than one year when he knowingly possessed the subject firearm.

### B.    Subject-matter jurisdiction

Dillard argues that because the indictment in his case failed to make out a federal offense, the court lacked subject-matter jurisdiction when it convicted him.  The government responds that, under the Supreme Court's decision in *United States v. Cotton*,[46] the indictment's omission of the mens rea element recognized in *Rehaif* does not strip the court of jurisdiction.  Dillard replies that *Cotton* addressed an indictment's failure to address the facts necessary to support enhanced sentencing, not an indictment's failure to make out a federal offense.

In *Cotton,* the indictment did not specify drug quantities necessary to support an enhanced sentence under 21 U.S.C. § 841(b).  The Supreme Court overturned the Fourth Circuit's decision that the "jurisdictional defect" required vacating the defendants' convictions, reasoning that "defects in an indictment do not deprive a court of its power to adjudicate a

---

[44] *Id.*

[45] *United States v. Bowens*, 938 F.3d 790, 797–98 (6th Cir. 2019)*, cert. denied sub nom. Hope v. United States*, 140 S. Ct. 814, 205 (2020), and *cert. denied*, No. 19-6757, 2020 WL 1496666 (U.S. Mar. 30, 2020) ("The defendants' reading of *Rehaif* goes too far because it runs headlong into the venerable maxim that ignorance of the law is no excuse.").

[46] *United States v. Cotton*, 535 U.S. 625 (2002).

1    case."[47]  The *Cotton* Court favorably quoted an earlier decision in which it rejected a

2    jurisdictional challenge to an indictment that did "not charge a crime against the United

3    States."[48]

4        The indictment against Dillard alleged that he knowingly possessed a firearm, but it

5    failed to allege that he knew he had been convicted of a crime punishable by a term of

6    imprisonment of more than one year at the time.[49]  Under *Cotton,* however, Dillard's objection

7    that the indictment does not charge a federal offense "goes only to the merits of the case."[50]

8    Dillard distinguishes the facts of *Cotton* and instead relies on two Ninth Circuit decisions pre-

9    dating *Cotton*.[51]  But *Cotton*'s broad language and the Ninth Circuit's later recognition that

10    *Cotton* forecloses a challenge to an indictment that failed to allege specific intent suggests that

11    these decisions have been overruled.[52]  And in *Rehaif* itself, the Court remanded with

12    instructions to conduct harmless-error review rather than dismiss the indictment, suggesting that

13    the error it identified was not jurisdictional.[53]  So Dillard's jurisdictional challenge does not

14    merit vacating his conviction or sentence.

---

17    [47] *Id.* at 630.

18    [48] *Id.* at 631 (quoting *Lamar v. United States*, 240 U.S. 60, 64 (1916)).

      [49] ECF No. 1.

19    [50] *Cotton*, 535 U.S. at 631 (quoting *Lamar*, 240 U.S. at 65).

20    [51] ECF No. 85 at 4–5 (citing *United States v. James*, 980 F.2d 1314, 1316 (9th Cir. 1992), and *United States v. Ruelas*, 106 F.3d 1416, 1418 (9th Cir. 1996)).

21    [52] *See Cotton,* 535 U.S. at 630–31; *United States v. Velasco-Medina*, 305 F.3d 839, 845–46 (9th Cir. 2002) (jurisdictional challenge that indictment "failed to charge [defendant] with an offense

22    against the United States . . . is untenable in light of the Supreme Court's recent decision in [*Cotton*]").

23    [53] *United States v. Balde*, 943 F.3d 73, 92 (2d Cir. 2019) (rejecting argument that failure to allege *Rehaif* mens rea element stripped district court of jurisdiction) (citing *Rehaif*, 139 S. Ct. at 2200).

## C.    Procedural default

The government argues that Dillard's motion must be denied because he procedurally defaulted his challenges to the indictment and his plea by failing to raise these objections on appeal.  "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' . . . or that he is 'actually innocent.'"[54]  "[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures."[55]  Actual prejudice "requires the petitioner to establish 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"[56]

Dillard concedes that he did not raise his challenge on direct appeal.[57]  Dillard has demonstrated cause because the legal basis for his challenge was not reasonably available in light of the broad consensus among the circuit courts before *Rehaif*.[58]  But Dillard has not demonstrated actual prejudice because the record shows that Dillard knew he had been convicted of a crime punishable by a term of imprisonment of more than one year.  By the date he was alleged to have unlawfully possessed a firearm, Dillard had been sentenced to: (a) 18 years

---

[54] *Bousley v. United States*, 523 U.S. 614, 622 (9th Cir. 1998) (citations omitted).

[55] *Reed v. Ross*, 468 U.S. 1, 16 (1984).

[56] *Bradford v. Davis*, 923 F.3d 599, 613 (9th Cir. 2019) (quoting *Murray v. Carrier*, 477 U.S. 478, 494 (1986)) (alteration in original).

[57] ECF No. 87 at 5.

[58] *See Reed*, 468 U.S. at 17 (cause exists if a Supreme Court decision "overturn[s] a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved") (quotation omitted).

imprisonment for robbery and burglary; (b) 10 years imprisonment for robbery; and (c) 36 to 90

months imprisonment for robbery.[59]  Dillard actually served well over ten years of those

sentences.[60]  This evidence demonstrates that Dillard well knew at the time of the offense that he

had been convicted of a crime punishable by imprisonment for a term exceeding one year and

forecloses Dillard's actual-prejudice and actual-innocence arguments.[61]  And Dillard's

arguments that the record does not show that he knew he was barred from possessing a firearm[62]

are unavailing because *Rehaif* does not require it.[63]  Dillard also argues that "an inquiry into the

sufficiency of the evidence or actual guilt of the defendant" is not relevant to this prejudice

inquiry,[64] but Dillard must show "actual prejudice" to excuse his default[65] and numerous other

courts have resolved § 2255 challenges based on *Rehaif* on this basis.[66]

---

[59] PSR ¶¶ 24–29.

[60] *Id.*

[61] *See, e.g., United States v. Hollingshed*, 940 F.3d 410, 416 (8th Cir. 2019) (finding defendant not entitled to relief under *Rehaif* where he stipulated at trial that he was a convicted felon and cannot show a reasonable probability that the outcome of proceedings would have been different); *United States v. Benamor*, 937 F.3d 1182, 1189 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 818 (2020) (finding "no probability that, but for the error, the outcome of the proceeding would have been different" with the *Rehaif* element due to the defendant's history of felony convictions for which he "spent more than nine years in prison" before his felon-in-possession charge).

[62] ECF Nos. 85 at 22; 87 at 18.

[63] *Supra* n. 42–45 & accompanying text.

[64] ECF No. 87 at 9.

[65] *United States v. Frady*, 456 U.S. 152, 168 (1982) ("In applying this dual standard to the case before us, we find it unnecessary to determine whether [the § 2255 petitioner] has shown cause, because we are confident he suffered no actual prejudice . . . .").

[66] *See, e.g.*, *Whitley v. United States*, No. 04 CR. 1381 (NRB), 2020 WL 1940897, at *2 (S.D.N.Y. Apr. 22, 2020) ("[A]ny argument that Whitley was prejudiced therefrom is belied by the sheer implausibility that, after having been convicted of multiple prior felony convictions for which sentences exceeding a year had been imposed, and having in fact served more than a year in prison in connection therewith . . . , Whitley nevertheless lacked the requisite awareness of his restricted status."); *MacArthur v. United States*, No. 1:12-CR-00084-JAW, 2020 WL 1670369, at *10 (D. Me. Apr. 3, 2020); *Waring v. United States*, No. 17 CR. 50 (RMB), 2020 WL 898176, at

**D.    Structural error**

As a final salvo, Dillard argues that the *Rehaif* issue is a structural error that is not subject to any form of case-specific harmless-error review.[67]  But even if Dillard's procedural default could be excused, his argument that the *Rehaif* issue is a structural error is unavailing.  Structural errors "go to the framework within which judicial proceedings are conducted, they 'infect the entire trial process' and accordingly require 'automatic reversal of the conviction.'"[68]  The Supreme Court has noted that "structural errors are a very limited class of errors that affect the framework within which the trial proceeds, such that it is often difficult[t] to asses[s] the effect of the error."[69]  They include deprivation of counsel, lack of an impartial trial judge, violation of the rights to self-representation at trial and a public trial, and an erroneous reasonable-doubt instruction.[70]

In *United States v. Gary*, the Fourth Circuit recently classified a district court's failure to advise a defendant of the *Rehaif* mens rea element prior to his guilty plea as a structural error.[71]  I granted Dillard leave to address *Gary* and ordered the government to respond.[72]  Having reviewed the additional briefing, I am not persuaded that the *Rehaif* error amounts to structural error.  First, the Supreme Court held in *Neder v. United States* that a district judge's failure to

---

*2 (S.D.N.Y. Feb. 25, 2020); *Floyd v. United States*, No. 19 C 6578, 2020 WL 374695, at *3 (N.D. Ill. Jan. 23, 2020).

[67] ECF No. 88 at 2.

[68] *McKinney v. Ryan*, 813 F.3d 798, 821 (9th Cir. 2015) (en banc).

[69] *United States v. Marcus*, 560 U.S. 258, 263 (2010) (citations and quotations omitted).

[70] *Id.*

[71] *United States v. Gary*, 954 F.3d 194 (4th Cir. 2020).

[72] ECF No. 88.

instruct the jury on an offense element did not amount to structural error.[73]  Second, in *Rehaif* itself, the Supreme Court remanded for harmless error review rather than reversing the conviction.[74]  And finally, the Ninth Circuit held in *United States v. Benamor* that a *Rehaif* error did not affect the substantial rights of a defendant who had been previously sentenced to terms of imprisonment greater than one year.  Each of these cases suggest that Dillard's conviction does not require automatic reversal.[75]  So I deny Dillard's *Rehaif* claims.

**Conclusion**

IT IS THEREFORE ORDERED that Dillard's amended motion to vacate under 28 U.S.C. § 2255 **[ECF No. 85] is GRANTED in part and DENIED in** part: it is DENIED as to the *Rehaif* claims but GRANTED as to the *Johnson* claim**.  Dillard's sentence is VACATED, and the parties are HEREBY ORDERED to appear for RESENTENCING without application of the ACCA enhancement on August 10, 2020, at 11:00 a.m.** in Courtroom 6D of the Lloyd D. George U.S. District Courthouse.  The Government is directed to coordinate any necessary transportation of the defendant from his BOP facility to this district for the hearing.

Dated: May 6, 2020

_____
U.S. District Judge Jennifer A. Dorsey

---

[73] *Neder v. United States*, 527 U.S. 1, 25 (1999).

[74] *Rehaif*, 139 S. Ct. at 2200.

[75] *Benamor*, 937 F.3d at 1189.